OPINION *Page 2 
{¶ 1} Appellant Rachel Collins, mother of Blake and Bridgett Garbrandt, appeals the decision of the Tuscarawas County Common Pleas Court, Juvenile Division to grant permanent custody of the children to the Tuscarawas County Job and Family Services (hereinafter "TCJFS").
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} Appellant has two children Blake Garbrandt (d.o.b. April 12, 2006) and Bridgett Garbrandt (d.o.b. April 29, 2007) with Michael Garbrandt[1]. On June 8, 2006, the TCJFS filed a complaint alleging that Blake Garbrandt who was, at that time, two months of age, was neglected and dependent. The complaint alleged domestic violence between the parents, poor home conditions, mental health and substance abuse issues with both of the parents. Initially, the child was placed with his grandparents. The grandparents requested removal of the child and he was placed into the temporary custody of TCJFS and placed in a certified foster home. The parents entered an admission to the dependency charge and the trial court dismissed the neglect charge. The child remained in the custody of TCJFS. TCJFS provided a reunification case plan for the parents. Appellant complied with case plan services and objectives, including, completion of a parent education class, an alcohol and addiction assessment, and psychological exam. In addition, appellant's drug screens were negative. Mr. Garbrandt also completed the parent education class. TCJFS recommended supervised home visits. During the pendency of this case, appellant became pregnant with a second child. *Page 3 
 {¶ 3} On April 29, 2006, Bridgett Garbrandt was born. The TCJFS initially did not take any action to intervene on behalf of that child, believing that appellant was substantially engaged in case plan services and had made progress to alleviate conditions leading to the removal of the older child.
 {¶ 4} In August 2006, Mr. Garbrandt tested positive for marijuana in a court ordered drug screen. Mr. Garbrandt was evaluated for mental health and addiction services, but he cancelled all subsequent appointments. He was incarcerated for contempt of court for a failure to pay fines on a traffic case. He was released from jail.
 {¶ 5} On April 5, 2007, the trial court suspended home visitation with Mr. Garbrandt due to a domestic violence incident in which he choked and bit appellant. The trial court ordered supervised visitation at the agency or Personal and Family Counseling Services. Appellant indicated she would not allow Mr. Garbrandt in the home. Mr. Garbrandt's last contact with the children was in April 2007.
 {¶ 6} TCJFS removed the infant from the custody of appellant on July 24, 2007 and filed a complaint alleging abuse, neglect and dependency. The infant sustained severe injuries to her head and legs, which were later determined to be caused by Brian Green, appellant's boyfriend. Brian Green is currently incarcerated for causing injury to the infant. The parents admitted to the complaint of abuse, neglect, and dependency. The trial court found the infant to be an abused, neglected and dependent child. Both children remained in the temporary custody of TCJFS. TCJFS alleged the agency advised appellant not to have Mr. Green around her infant child.
 {¶ 7} TCJFS learned that Mr. Garbrandt had been residing with appellant despite her indication to keep him away from the home. *Page 4 
 {¶ 8} Appellant was granted supervised visitation at a controlled location in October 2007. Appellant failed to prepare for the visits with appropriate food and snacks for the children. She struggled to provide a nurturing environment during the visits.
 {¶ 9} On November 7, 2007, TCJFS filed a motion for permanent custody of the children. Prior to the scheduled hearing date on that motion, appellant advised TCJFS of her intention to stipulate to the permanent custody request. In January 2008, appellant discontinued participation in all case plan services after a positive drug screen for marijuana. She had only a few additional visitations with her children, and those ceased in February 2008, when she stopped appearing for them.
 {¶ 10} On April 1, 2008, the trial court held the permanent custody hearing. The parents failed to appear. After the presentation of evidence, the trial court judge issued a ruling from the bench placing the children in the permanent custody of TCJFS. The ruling was journalized and the judgment entry was filed on April 23, 2008. From that judgment entry granting permanent custody, appellant now appeals.
 {¶ 11} Appellant raises one Assignment of Error:
 {¶ 12} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES; AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT A GRANT OF PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN AND THAT THE CHILDREN COULD NOT OR SHOULD NOT BE PLACED WITH THE MOTHER WITHIN A REASONABLE PERIOD OF TIME; AND THE DECISION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. *Page 5 
 I. {¶ 13} In her sole assignment of error, appellant argues the trial court decision to grant permanent custody to TCJFS was not supported by clear and convincing evidence. We disagree.
 {¶ 14} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 15} Revised Code 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 16} Following the hearing, R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:
 {¶ 17} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period *Page 6 
ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 18} "(b) The child is abandoned.
 {¶ 19} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 21} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 22} In the case sub judice, the trial court found that the children could not be placed with either parent within a reasonable time. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E) exist, which includes:
 {¶ 23} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the *Page 7 
conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 24} * * *
 {¶ 25} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
 {¶ 26} The issue in this case is whether appellant can change her conduct to appropriately parent her children. The older child was originally removed due to a history of domestic violence, substance abuse and poor home conditions. The parents progressed in their case plan after the removal of the first child. Tr. at 5-6. After the domestic violence incident between Mr. Garbrandt and appellant in April of 2007, appellant stated she would not allow him in the home. Tr. at 5. Ms. Wanosik with TCJFS testified that after this incident Mr. Garbrandt was in the home. Id. Ms. Wanosik then advised appellant not to allow Mr. Green, her new boyfriend, around the children. Id. Appellant allowed Mr. Green to be with the infant and he caused severe injuries to the infant for which he was prosecuted. Tr. at 6.
 {¶ 27} After the injuries to the infant, appellant had supervised visits with the children. The Guardian Ad Litem reported in her April 1, 2008 Report that appellant *Page 8 
"continued to struggle with providing the children with a nurturing environment." Further, in January 2008, appellant tested positive for marijuana. Tr. at 10. After this test, appellant abandoned all case plan services and stated to Ms. Wanosik that she would agree to permanent custody. Tr. at 8. Appellant also suspended all visitation. Id.
 {¶ 28} Based upon our review of the record, we find there was clear and convincing evidence to support the trial court's finding that the children could not be placed with appellant in a reasonable amount of time. Appellant actively participated in the case plan, but she then abandoned all efforts to safely provide for her children.
 {¶ 29} The next determination is whether the trial court committed error in concluding that the grant of permanent custody to TCJFS was in the children's best interests. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 30} Upon review of the record, we find the trial court did not err in finding by clear and convincing evidence that the children should be placed in the permanent custody of TCJFS. It is well-established that "[t]he discretion which the juvenile court *Page 9 
enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re MauzyChildren (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In reAwkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 31} Initially, appellant complied with the case plan. Tr. at 5. Appellant's history reflects she struggled with domestic violence issues. Further the Guardian Ad Litem reported appellant has been unable to attain the skills to nurture her children. Appellant stated she would agree to permanent custody. Tr. at 8 and 14. After stating this to two case workers, appellant then indicated she wanted to continue to visit her children. Tr. at 15. However, she did not state she wanted to revoke her agreement to permanent custody. Tr. at 14.
 {¶ 32} The children's natural grandparents are unwilling to take custody of the children. Tr. at 12.
 {¶ 33} The children are together in a foster home and are doing well. Tr. at 10. The foster family wishes to adopt the children. Id. The Guardian Ad Litem stated in her report regarding the foster home that "[t]he children are clearly very happy, balanced stable children. They are both very attached to each other as well as the foster parents and teenage nephew. . . . [G]randmother came over and showered the children with love." Further, the Guardian Ad Litem recommended that the children be placed in the permanent custody of TCJFS.
 {¶ 34} We find sufficient, competent and credible evidence in the record to support the trial court's finding by clear and convincing evidence, and find the trial court *Page 10 
did not err in determining the best interests of the children was best served by terminating the parental rights and granting permanent custody to TCJFS.
 {¶ 35} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed.
 Delaney, J. Wise, P.J. and Edwards, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.
[1] Michael Garbrandt is not a party to these appeals. *Page 1